**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

BRIAN WEST,

        Plaintiff,

   v.

DR. MARK WINCHELL,

        Defendant.

CIVIL ACTION NO.: 6:18-cv-55

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently incarcerated at Georgia State Prison in Reidsville, Georgia, filed this 42 U.S.C. § 1983 Complaint, as amended, concerning certain medical care he received while incarcerated. Doc. 4. Plaintiff also filed two Motions for Help to Meet Service Requirements. Docs. 10, 14. The Court now conducts the requisite screening of Plaintiff's Amended Complaint and supplements. 28 U.S.C. §1915A. For the reasons which follow, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's claims, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal. I **DENY as moot** Plaintiff's Motions for Help to Meet Service Requirements. Docs. 10, 14.

## BACKGROUND

Plaintiff filed his initial Complaint and numerous medical records on April 30, 2018, doc. 1, and filed an Amended Complaint as a matter of right on May 15, 2018, doc. 4, which incorporates many of the attachments to the original Complaint.[1] Plaintiff's claims arise from a

---

[1]      The facts in this section are drawn from Plaintiff's Amended Complaint. Doc. 5. <u>See</u> <u>Fritz v. Standard Sec. Life Ins. Co. of New York</u>, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal

shoulder manipulation procedure Defendant performed on August 23, 2016 and follow-up care Defendant provided after that procedure. Plaintiff states the procedure and follow-up care caused him permanent muscle damage, disfigurement, weakness, and pain in his left shoulder area. Doc. 4 at 7. Plaintiff asserts a claim for deliberate indifference under § 1983 as well as state-law claims of negligence and battery.

Specifically, Plaintiff contends Defendant Winchell, a private orthopedic surgeon under contract with the Georgia Department of Corrections, initially performed surgery on his left rotator cuff on April 12, 2016 at Georgia State Prison. Id. at 1, 2. Subsequent to this operation, Plaintiff developed a "frozen shoulder" due to insufficient physical therapy, and Defendant told Plaintiff that he needed to undergo a shoulder manipulation to fix this issue. Id. At that point, Plaintiff claims his shoulder did not have any significant impairments, aside from a slight loss of motion and a little pain. Id.

Plaintiff consented to a "left shoulder manipulation" and went in for that procedure on August 23, 2016. Id. at 2–6. Upon arrival, Plaintiff was told by medical personnel that Dr. Winchell was going to conduct the manipulation by hand and that no equipment would be utilized for the procedure. Id. Prior to being sedated, Plaintiff saw "a heavy looking piece of black medical equipment sitting [on the operating table]." Id. Plaintiff asserts that Defendant used this medical equipment during the manipulation without Plaintiff's consent. Id. Plaintiff awoke following the manipulation and was told by medical personnel that Defendant broke up "adhesive capsulitis" in his shoulder. Id. at 3. At this point, Plaintiff was in "extreme pain" and was taken back to his cell without any pain medication or follow-up treatment. Id. After the procedure and while back in his cell, Plaintiff removed his jumpsuit and observed that his

Rules, an amended complaint supersedes the original complaint.").

shoulder and elbow were swollen, that his left shoulder muscles were "completely gone," and that his left arm hung approximately an inch lower than his right arm.  Id.

Plaintiff was still in extreme pain when he next saw Defendant on August 30, 2016 for a follow up, and the abnormalities in his arm were still present.  Id.  When Plaintiff told Defendant of his injuries, Defendant responded, "[Y]ou're such a big baby, if you don't work your shoulder you're going to have a frozen shoulder the rest of your life, work your shoulder until you start therapy."  Id.  Plaintiff further states Defendant did not physically examine Plaintiff during this follow-up appointment.  Id.  Plaintiff alleges Defendant refused to treat his swelling or attenuated arm or his subsequent pain and only recommended physical therapy to Plaintiff.  Id. at 4.  Plaintiff further alleges Defendant misrepresented that Plaintiff had full range of motion following his August 23, 2016 adjustment in Plaintiff's medical records.  Id.

Plaintiff pursued physical therapy but had continued pain and limited motion in his shoulder, worse than what was present prior to his manipulation.  Id. at 4–5.  On October 18, 2016, Plaintiff returned to Dr. Winchell, who stated Plaintiff was not effectively working his shoulder to avoid atrophy, and warned that Plaintiff would have a frozen shoulder for the rest of his life without adequately working the shoulder.  Id. at 5.  Plaintiff informed Dr. Winchell that his shoulder was not frozen, but he believed something was out of place, and he requested an MRI.  Dr. Winchell rejected Plaintiff's request for an MRI, concluding an MRI was not necessary, but ordered an electromyogram ("EMG") on Plaintiff's shoulder.  Plaintiff underwent an EMG on December 27, 2016 and visited Defendant on February 14, 2017 to go over the results of that test.  Id.  Defendant stated that Plaintiff's injuries came from nerve damage in his neck as a result of not properly working his shoulder following the manipulation.  Id. at 6.

Plaintiff grieved Defendant's refusal to order an MRI, but his grievance was denied.  Id. at 7.  Plaintiff saw a different doctor on May 1, 2017 at Augusta State Medical Prison who told Plaintiff that he had dead muscles in his neck and ordered an MRI on that area.  Id.  Plaintiff did not consent to the MRI on his neck because he did not believe his neck was connected with the symptoms he was experiencing.  Id.  Plaintiff contends that, as of the day he filed his Complaint, he had continued lack of motion in his shoulder and numbness and tingling in his left hand and that his clavicle, scapula, and shoulder were out of place.  Id.

Plaintiff contends Defendant was deliberately indifferent to Plaintiff's serious medical needs following his surgery, in violation of Plaintiff's Eighth Amendment rights.  Id. at 8.  Plaintiff further contends Defendant's unauthorized use of medical equipment during his procedure constitutes a battery under state law and that Defendant was negligent by breaching his duty of care to Plaintiff during the manipulation.  Id.  Plaintiff sues Defendant in his individual and official capacities, id. at 1, and requests declaratory and injunctive relief along with compensatory, punitive, and nominal damages, id. at 9.  Plaintiff also seeks to effectuate service under the Georgia Tort Claims Act.  O.C.G.A. § 50-21-26.

## STANDARD OF REVIEW

Plaintiff brings this action *in forma pauperis*.  Doc. 5.  Pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity or the employee of a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleading contained in the Federal Rules of Civil Procedure when reviewing a Complaint on an application to proceed *in forma pauperis*.  See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances).   Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'"   Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010).   Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.   Twombly, 550 U.S. at 555.   Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."   Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed.   Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v.

<u>Harris</u>, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys. . . ." (quoting <u>Hughes v. Lott</u>, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

Plaintiff asserts a claim for deliberate indifference in violation of the Eighth Amendment to the United States Constitution under § 1983 as well as state-law claims of negligence and battery. Doc. 4 at 8.

## I.      Eighth Amendment Deliberate Indifference Claim

Plaintiff asserts Defendant was deliberately indifferent to Plaintiff's serious medical needs in the course of performing the August 23, 2016 shoulder manipulation and during follow-up care after that procedure. <u>Id.</u> Plaintiff asserts this claim under § 1983 and alleges Defendant's conduct violated the Eighth Amendment to the Constitution.[2]

The standard for cruel and unusual punishment in the medical care context, embodied in the principles expressed in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not

---

[2]      Plaintiff asserts his deliberate indifference claim against Defendant in his official and individual capacity. Doc. 4 at 1. As explained below, Plaintiff fails to state a cognizable deliberate indifference claim against Defendant, regardless of whether that claim is asserted against Defendant in his official or individual capacity. The Court notes, however, that even if Plaintiff's claim were cognizable, any claim against Defendant in his official capacity for money damages should be dismissed under the Eleventh Amendment. A suit against a state actor in his official capacity is effectively a suit against the state itself, and the state is immune from such suits under the Eleventh Amendment. <u>Alden v. Maine</u>, 527 U.S. 706, 712–13 (1999); <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 67 (1989).

received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. In order to prevail on a deliberate indifference claim under the Eighth Amendment, a prisoner must show three elements: (1) an objectively serious medical need; (2) a defendant's subjective, deliberate indifference to that need; and (3) an injury caused by the defendant's indifference. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

"Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Additionally, "it is well established that a difference in opinion or a disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs." John v. Cochran, Civil Action No. 13-0001, 2013 WL 5755189, at *9 (S.D. Ala. Oct. 22, 2013). "The question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Owen v. Corizon Health Inc., 703 F. App'x 844, 849 (11th Cir. 2017) (int. cits. omitted) (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995)). "However, "medical treatment so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness

constitutes deliberate indifference." Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (internal quotations omitted).

Here, Plaintiff asserts Defendant was deliberately indifferent to Plaintiff's serious medical needs on two factual bases: (1) Defendant utilized a piece medical equipment during the shoulder manipulation while Plaintiff was under anesthesia and after Plaintiff was informed by medical staff that Defendant would only be using his hands; and (2) Defendant failed to provide adequate follow-up care after the shoulder manipulation. Plaintiff's claims, as pleaded, are medical malpractice claims or simply disagreements with Defendant over Plaintiff's diagnosis and treatment; the conducted alleged does not give rise to a claim of deliberate indifference under the Eighth Amendment.

Regarding Defendant's use of a medical device during the shoulder manipulation, Plaintiff contends he is sure that Defendant used an unknown medical device during the shoulder manipulation because of the negative results of the procedure, though he does not know what sort of device was used, and the medical records do not demonstrate that any device was used. Even if Plaintiff's speculation about the use of medical device were proven to be true, the alleged use of this device does not, on its own, constitute a violation of Plaintiff's Eighth Amendment rights.[3] Plaintiff ostensibly argues that the device should not have been used at all or was used improperly. The form of treatment utilized by a medical provider is "is a classic example of a matter for medical judgment" and cannot support liability under the Eighth Amendment. Adams, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting Estelle, 429 U.S. at 107). And whether the device was used properly is, at most, a question of whether Defendant acted negligently. Id.

---

[3] Plaintiff alleges he did not consent to the use of unknown device, though he provides a copy of a consent form he signed in connection with the procedure. Doc. 1-2 at 20. The issue of the scope of Plaintiff's consent is not germane to the Court's deliberate indifference analysis in this Report and Recommendation.

at 1543 ("Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment."). While Plaintiff may strongly disagree with the use of a device during his should manipulation or may suggest the device was used improperly, such allegations are not sufficient for stating a claim of deliberate indifference under the Eighth Amendment.

Regarding Plaintiff's follow-up care, Plaintiff alleges he returned to Defendant seven days after the manipulation of his left shoulder and, at that time, Plaintiff was in extreme pain, his arm was attenuated, he still had some swelling, and there was a length difference in his arms. Doc. 4 at 3. Defendant responded to Plaintiff's complaints by telling him "you're such a big baby" and instructing him to work his shoulder until he started physical therapy. Id. Defendant did not physically examine Plaintiff's shoulder or arm during that visit. Id. Plaintiff indicates this was because the injuries were too "fresh" to be examined. Id. Plaintiff visited Defendant twice more, once on October 18, 2016 and again on February 14, 2017. Id. at 5. On the first occasion, Defendant told Plaintiff that he would have a frozen shoulder for the rest of his life because he had not properly worked out his shoulder. Id. Defendant then ordered Plaintiff an EMG but rejected Plaintiff's request for an MRI as unnecessary. Id. Defendant reviewed the EMG with Plaintiff in February of 2017 and told Plaintiff that he had dead muscle in his shoulder arising from nerve damage in his back, which Defendant determined resulted from Plaintiff's failure to properly exercise the shoulder following the initial surgery. Id. at 5–6. Plaintiff then saw another physician who ordered an MRI on Plaintiff's neck, which Plaintiff refused. Id. at 7.

Plaintiff fails to allege Defendant was deliberately indifferent to a serious medical need during the follow-up care. Plaintiff plausibly alleges he had a serious physical injury, but

Plaintiff fails to allege Defendant was deliberately indifferent to that need. Plaintiff alleges he presented an injury Defendant knew was serious, and that Defendant "purposely ignored [Plaintiff's] pains." Id. at 8. However, Plaintiff's factual allegations contradict this conclusory statement. Plaintiff's allegations show he received regular and frequent follow-up care from Defendant, and during those visits, Defendant consistently recommended a course of treatment, including physical therapy and ordering an EMG on Plaintiff's neck. These allegations do not show that Defendant's treatment "was so cursory as to amount to no care at all." McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999) (denying summary judgment to physician defendants who prescribed only Tylenol and Pepto-Bismol to a prisoner plaintiff who presented with multiple cancer symptoms including extreme pain and severe weight loss over an extended period of time). Defendant's "you're such a big baby" comment may have been overly harsh and uncompassionate, but it does not demonstrate Defendant was indifferent to Plaintiff's medical needs. Indeed, the statement was made in the course of Defendant warning Plaintiff about the importance of following Defendant's recommended course of treatment.

As with the first ground, Plaintiff's second factual basis for his claim is a simply a disagreement with Defendant's diagnosis and treatment, which is a "classic example of a matter for medical judgment" and not an appropriate basis for grounding liability under the Eighth Amendment." Adams, 61 F.3d at 1545. At most, Plaintiff has alleged Defendant was negligent, but that also is insufficient to state a claim for deliberate indifference. Id. Plaintiff has not alleged any treatment by Defendant that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness constitutes deliberate indifference." Waldrop, 871 F.2d at 1033 (internal quotations omitted). Therefore, Plaintiff has failed to state a claim for deliberate indifference.

Accordingly, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's claim for deliberate indifference against Defendant.

## II.     State Law Claims

Plaintiff also asserts state law tort claims of battery and negligence against Defendant Winchell.   Doc. 4 at 1.   Plaintiff argues that this Court has supplemental jurisdiction over his state law claims, but the Court may decline to exercise supplemental jurisdiction over state law claims where "the district court has dismissed all claims over which it has original jurisdiction[.]"   28 U.S.C. § 1367(c)(3).   Because I recommend the Court dismiss Plaintiff's only claim arising under federal law, I further **RECOMMEND** the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and **DISMISS without prejudice** those remaining claims.

## III.     Plaintiff's Pending Motions

Plaintiff filed two Motions for Help to Perfect Service under the Georgia Tort Claims Act in this action seeking assistance with service from the Court.   Given the Court's need to conduct frivolity review before service in this case, Plaintiff's Motions are premature.   Moreover, because I am recommending the dismissal of Plaintiff's claims, Plaintiff's Motions are now moot.   Therefore, I **DENY as moot** Plaintiff's Motions for Help to Perfect Service under the Georgia Tort Claims Act.   Docs. 10, 14.

## IV.     Leave to Appeal *in Forma Pauperis*

Should the Court adopt my recommendation that Plaintiff's claims be dismissed, the Court should also deny Plaintiff leave to appeal *in forma pauperis* as to the dismissed claims.[4] Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these

---

[4]     A certificate of appealability is not required in this § 1983 action.

issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal as to any dismissed claims.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's claims, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal. I **DENY as moot** Plaintiff's Motions for Help to Meet Service Requirements. Docs. 10, 14. The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.

Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 21st day of August, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA